IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JAMES A. BRENSON, JR.

                                   **CASE NO. 2:11-CV-1146**
       **Petitioner,**               **JUDGE EDMUND A. SARGUS, JR.**
                                   **Magistrate Judge Kemp**

**v.**

**WARDEN, TOLEDO**
**CORRECTIONAL INSTITUTION,**

       **Respondent.**

## OPINION AND ORDER

Petitioner, a state prisoner, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The case is before the Court to consider Petitioner's motion for discovery (Doc. 39), the response (Doc. 40) and the reply (Doc. 44.) For the reasons that Follow, the motion for discovery will be **DENIED.**

### I. Facts and Procedural History

A brief discussion of the facts and procedural history of this case is helpful to consideration of this motion.

This case arises out of the June 11, 2000, murder of Norman "Duck" Herrell. Petitioner initially was indicted for that crime on July 28, 2000; however, on January 16, 2001, the prosecutor dismissed the indictment pending further investigation. Seven years and three months later, on April 16, 2008, a second indictment was issued charging Petitioner and a co-defendant, William Allen, with two counts of aggravated murder, one count of murder, two counts of kidnaping, and two counts of aggravated

robbery.  One of those counts was dismissed by the Court; a jury found Petitioner and his co-defendant guilty on the remaining counts.  On July 31, 2008, the trial court imposed on both defendants an aggregate term of thirty (30) years to life imprisonment with eligibility for parole after twenty years.  *See Exhibit 33 to Return of Writ.*

Represented by new counsel, Petitioner filed a timely appeal.  *Exhibit 37 to Return of Writ.*  He argued on appeal that he had been denied his right to a speedy trial; denied a fair trial due to the eight-year delay in bringing charges; denied the right to counsel in connection with his 2008 testimony to the grand jury; denied a fair trial when the prosecutor failed to advise him that charges already had been filed before he testified to the grand jury; denied his right to an impartial jury because the trial court refused to dismiss jurors exposed to pre-trial publicity; denied his right to a fair trial because the trial court twice refused to grant a mistrial; denied a fair trial in view of testimony from his prior attorney; denied a fair trial due to admission of Petitioner's grand jury testimony to the jury; denied effective assistance of counsel; denied a fair trial based on cumulative error; that his convictions were against the manifest weight of the evidence; and that his convictions should have been merged into one count of aggravated murder and one count of kidnaping or aggravated robbery.  *See Exhibit 38 to Return of Writ.*  On September 28, 2010, the appellate court sustained Petitioner's claim that his two convictions on aggravated murder and his convictions on aggravated robbery and kidnaping should have been merged for sentencing and remanded the case to the trial court; the appellate court otherwise affirmed the trial court's judgment.  *See State v.*

*Brenson*, ("Brenson I") 2010 WL 3784890, at *1-4 (Delaware Co. App. Sept. 28, 2010). In

its Opinion, the state court of appeals recited these facts:

> On June 11, 2000, at approximately 10:00 p.m., Norman "Duck" Herrell was at his home talking on the telephone with his ex-wife, Phyllis Gaskins. A knock on the door at Herrell's house interrupted the conversation. Herrell told Gaskins that he would call her back, but he never called.
>
> The next morning, Herrell did not report to work at his furniture store, J & D furniture. His son, Michael Herrell, became concerned, and tried repeatedly to call his father throughout the day. When he still could not reach Herrell by the afternoon, Michael went to Herrell's house to check on him.
>
> Michael testified at trial that when he arrived at Herrell's house, the door was unlocked and there were blankets hanging over the windows in the living room. Michael stated that his father was an immaculate housekeeper and that when he entered the home on June 12th, the house was a mess, it appeared to have been ransacked, and Herrell's gun cabinet was open and his guns were missing. Michael found his father lying face down on the floor in a pool of blood in the basement. He called 911.
>
> The arriving officers searched the house for additional victims or suspects. No one else was found to be in the residence. They also checked for, but did not find, evidence of a forced entry.
>
> After determining that Herrell's death was a homicide, the Delaware Police Department contacted the Ohio Bureau of Criminal Investigation (B.C.I.) for assistance in processing the crime scene.
>
> While processing the scene, officers recovered several pieces of evidence. They recovered two knives, including a small brown knife from the love seat in the basement, which appeared to have blood on it. After DNA tests were run on the knife, it was determined that, the blood present on the knife was that of Herrell.

Officers also recovered a pair of brown cloth gloves, which were saturated with blood. DNA recovered from those gloves matched both Herrell's DNA and subsequently that of Brenson's co-defendant William Allen. Additionally, authorities recovered a long-sleeved, blue shirt that later was determined to possess the DNA of Allen, as well as his wife, Silvy Allen FN1.

FN1. The record reflects that the Allens were married in 2005.

Officers also recovered a guest receipt from a Meijer store in Oregon, Ohio, which is near Toledo. They were able to determine that a person who identified himself as K.W. Yowpp made the purchase and a return on June 9, 2000 FN2. K.W. Yowpp is a known alias of Brenson. Brenson's fingerprint was retrieved from the receipt.

FN2. 15T. at 2233

Brenson's fingerprint was also recovered from an envelope at Herrell's house containing a dog tag.

While searching Herrell's home, authorities observed that many items in the house had been disturbed, including pictures taken off walls, chairs moved from the kitchen to rooms that had blankets over the windows, rooms that had been ransacked, as if the intruder(s) were looking for something. They also observed a large quantity of illegal fireworks in the basement of the house.

Several days following the initial search of Herrell's house, authorities returned to the house after learning that Herrell had a safe hidden in the house. Herrell's family had not disclosed to the authorities that the safe existed, but after authorities asked about the safe, Herrell's daughter, who was the only person besides Herrell with the combination to the safe, opened it for them. Contained within the safe were silver coins, old stopwatches, a deed to rental property owned by Herrell, and some jewelry.

Franklin County Deputy Coroner, Dorothy Dean, testified that Herrell had been stabbed fifty-one times. Three of the stab wounds were potentially fatal.

During the investigation of Herrell's murder, officers discovered that Herrell and Brenson spent several months in prison together at Marion Correctional Institution in 1981. Herrell's children were also familiar with Brenson, having seen him with Herrell before. Herrell's children identified Brenson as "Muhammad."

Sometime in 2001, officers learned that Ohio Highway Patrol Trooper Brandon Spaulding stopped Brenson during the evening hours of June 11, 2000, on U.S. 23 South in the area of Bucyrus, Ohio. Trooper Spaulding testified at trial that he was running license plates on vehicles at a rest area, when he ran the license plate on Brenson's red Ford F–150 at approximately 8:51 p.m. The truck was registered to Mustafa Muhammad, which is Brenson's son. At that time, Trooper Spaulding believed that the license plate on the truck actually belonged on a different vehicle. The trooper pulled his cruiser up behind Brenson's vehicle and got out of his cruiser to approach Brenson. Upon approaching Brenson, Trooper Spaulding noted that Brenson was sitting in the vehicle alone.

Trooper Spaulding determined that he had conveyed one of the letters on the license plate incorrectly to the dispatcher, and started to explain the mistake to Brenson. Brenson became angry and began swearing at the trooper, claiming that the trooper was harassing him because of his race. Trooper Spaulding noticed that Brenson's front license plate was in the dashboard. He warned Brenson to attach the license plate to the front of the vehicle. Eight minutes after he initiated the stop, Trooper Spaulding cleared the call and left the rest stop.

According to Brenson FN3, he then went to the next exit to obtain materials to attach the license plate to the front of the truck. Brenson testified in 2002 and 2008 before the Delaware County grand jury that he was on his way to Delaware, Ohio, to purchase fireworks from Herrell. He also stated in

his 2008 grand jury testimony that he purchased zip ties to secure the license plate to the front of the truck FN4.

FN3. Brenson did not testify at trial. He did, however, testify twice before the Delaware County Grand Jury. He first testified on April 18, 2002. He testified a second time on April 15, 2008. Additionally, he agreed to meet with police detectives for an interview on January 14, 2003. It is from a combination of these three occasions that the prosecution introduced various statements made by Defendant Brenson at trial.

FN4. The prosecution attempted to demonstrate that a search of Brenson's vehicle in October 1999 yielded similar plastic zip ties in order to show that he did not purchase the plastic ties because of the June 11, 2000 traffic encounter with Trooper Spaulding. (12T. at 1390; 1395).

In March 2001, the police recovered Brenson's truck, and found no blood in the truck. They did find that his front license plate was attached to the front of the truck with a coat hanger.FN5

FN5. See note four, supra.

At trial, Phyllis Gaskins testified that when she was speaking on the phone with Herrell on the night of June 11, 2000, he told her that two "white guys" were at the door. She later retracted her statement, claiming that Herrell would not have called the men "white guys." Brenson later told authorities that he saw a van with "two white guys" come up to Herrell's house as he was leaving. He claimed they were in a white van with Cuyahoga County license plates on it.

Brenson told the grand jury that he left Herrell's house that night and returned to Toledo, arriving home around 11:00 or 12:00 that night. FN6.

FN6. Brenson did not testify at trial. He did, however, testify twice before the Delaware County Grand Jury. He first testified on April 18, 2002. He testified a second time on April 15, 2008. Additionally, he agreed to meet with police

detectives for an interview on January 14, 2003. It is from a combination of these three occasions that the prosecution introduced various statements made by Defendant Brenson at trial.

Brenson also testified before the grand jury that he and Allen had been friends since 1979, that they both lived in Toledo, and that they had taken numerous trips together over the years. At trial, the prosecution called numerous friends and family members of Brenson to testify that they had seen Brenson with Allen multiple times throughout the years.

In October 2005, Allen became linked to Brenson through an informant. Allen reported being the victim of a felonious assault. As a result, the police obtained a blood sample from Allen. Subsequently, police were able to link Allen's DNA to the shirt found in Herrell's kitchen. Allen was also found to have a 1–in–30 chance of being a contributor to the DNA found on the blood soaked cloth gloves in Herrell's kitchen.

Prior to being informed that his DNA was found at the scene of a crime, during an interview with the police in 2005 when he was the victim of a felonious assault, Allen informed the police that he was good friends with Brenson, whom he identified as "Muhammad." When the police showed Allen a photograph of Herrell, his demeanor changed and he looked at the picture and stated that he did not know him.

A car dealer in Toledo testified at trial that in April 2000, Allen purchased a car for $600 and then sold it back in July 2000 for $200. Shanica Masadeh, Silvy Allen's daughter, testified at trial that Silvy and Allen suddenly moved to Florida in July 2000, and that Silvy gave custody of her to Silvy's grandmother because Silvy could not support her. The police obtained records from Florida that Allen and Silvy both worked for a temporary agency from August 8, 2000, to December 20, 2000.

Brenson's first defense attorney, Thomas Beal, testified at trial that he had a conversation with the Delaware County Prosecutor on December 3, 2000, that the indictment against Brenson would be dismissed, most likely by December 15, 2000. Allen then returned to Ohio in late December, 2000.

\*\*\*

> Following their convictions, both defendants were sentenced
> to an aggregate of thirty years to life in prison.

*Brenson I*, No. 09-CA-18, 2010WL 3784890, at \*1-4 (Ohio App. 5th Dist. September 28,

2010). On November 3, 2010, the Court of Appeals denied Petitioner's motion for

reconsideration of its decision on Petitioner's claims regarding the denial of his right to

a speedy trial, dismissal of jurors based on pre-trial publicity, and merger of the two

aggravated robbery counts for purposes of sentencing. *Exhibit 42 to Return of Writ*. On

March 30, 2011, the Ohio Supreme Court accepted Petitioner's appeal on Petitioner's

propositions of law regarding the alleged violation of his right to a speedy trial and

vacated the appellate court's decision on merger of offenses in view of *State v. Johnson*,

128 Ohio St.3d 153 (2010)(overruling *State v. Rance*, 85 Ohio St.3d 632 (1999)), remanding

the case to the trial court. *State v. Brenson*, 128 Ohio St.3d 396 (2011). Pursuant to the

remand from the Ohio Supreme Court, the Court of Appeals re-opened the appeal, and

on April 15, 2011, held that Petitioner's convictions on aggravated robbery should have

been merged for sentencing purposes, and remanded the case to the trial court for re-

sentencing. *State v. Brenson ("Brenson II")*, No. 09-CA-18, 2011 WL 1466458 (Ohio 5th

Appellate Dist. April 15, 2011).

Petitioner now asserts in this federal habeas corpus petition that he is in the

custody of the Respondent in violation of the Constitution of the United States based

upon the following grounds, repeated here as set forth in Petitioner's habeas corpus

petition:

-8-

GROUND ONE: Brenson's right to a speedy trial was violated by the eight-year delay between his initial indictment and eventual trial.

GROUND TWO: Brenson's due process rights were violated by the eight-year delay in bringing him to trial.

GROUND THREE: Brenson was prejudiced by the trial court's refusal to sever his trial from that of Allen.

GROUND FOUR: Brenson's 2008 grand jury testimony was obtained in violation of his right to counsel and should have been suppressed.

GROUND FIVE: The prosecution abused the grand jury process by failing to tell Brenson that charges had already been filed against him (One) (1) hours before his 2008 testimony to the grand jury.

GROUND SIX: Brenson's right to an impartial jury was denied by the trial court's refusal to dismiss jurors who had been exposed to pre-trial publicity regarding this case.

GROUND SEVEN: The trial court abused its discretion and denied Brenson his right to a fair trial by failing to grant mistrials on two occasions after the jury was improperly exposed to prejudicial information.

GROUND EIGHT: The trial court erred in permitting the testimony of Brenson's prior trial attorney, (Att. Beal), because his testimony could be relevant if the jury used it to impermissible stack inferences.

GROUND NINE: In a case where the defendant had given three prior statements (over an eight (8) period) to the police and his credibility in those statements was a key issue, should the jury have been given transcripts of those statement[s] to take back into the jury room during deliberations, where they could pour over the statement[s] for any minor inconsistenc[ies]?

> GROUND TEN: The trial court erred by permitting extensive evidence regarding prior crimes, wrongs and bad acts by Brenson.
>
> GROUND ELEVEN: Brenson was denied his right to effective assistance of trial counsel.
>
> GROUND TWELVE: Brenson was denied a fair trial by the cumulative effect of the numerous errors in his trial.
>
> GROUND THIRTEEN: The verdict of guilty was against the manifest weight of the evidence.

Respondent has filed a return arguing that Petitioner's claims fail to present issues appropriate for federal habeas corpus review, are procedurally defaulted, or fail to provide a basis for federal habeas corpus relief.

After the Court appointed counsel to represent Petitioner, counsel asked the Court for permission to conduct discovery. As noted, that motion is the subject of this Opinion and Order. The Court will separately discuss each of the matters about which Petitioner has asked to conduct discovery to determine if he has shown good cause to do so.

## II. Petitioner's Discovery Requests

### A. The Speedy Trial Claims

Petitioner's request for discovery in regard to his claims that he was denied his right to a speedy trial (habeas corpus claims one and two) will be discussed together. Petitioner wants to depose the following witnesses about these claims: Carol O'Brien, Delaware County Prosecutor; Kyle Rohrer, Assistant Delaware County Prosecutor; Mark Leatherman, former Detective and Sergeant, City of Delaware Police Department;

Records Deposition of the Delaware County Prosecutor's Office; and a Records Deposition of City of Delaware Police Department.  He argues that  these depositions will "fill in the gaps left by the files" concerning the reasons for the long pre-indictment delay, including whether the police acted negligently in investigating and pursing charges against him.  *See Memorandum in Support of Motion for Discovery*, Doc. 39, PageID #3926.  Also, Petitioner argues that a records deposition and the deposition of the lead detective will show whether there is any evidence to corroborate the statements of David and Darla Herron to police.[1]

A habeas corpus petitioner is not entitled to discovery as of right.  *Bracy v. Gramley*, 520 U.S. 899 (1997); *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2011).  Rule 6(a) of the Rules Governing Section 2254 Proceedings in the United States District Court provides that a petitioner "shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause grants leave to do so, but not otherwise."  Discovery is warranted only where "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief [.]"  *Harris v. Nelson*, 394 U.S. 286, 300

---

[1]

  David Herron died prior to trial, and Darla Herron suffered from dementia.  *Trial Transcript*, at 2315-20  Darla Herron told police she saw two white males "messing around with their truck."  ECF No. 39-1, PageID #3937.  One of them threw a beer bottle into her front yard, which upset her.  She woke up her husband, David Herron, and they watched the two males walk down Noble Street to London Road returning and carrying items into a pink house.  David Herron indicated the men were carrying a garbage bag and carrying it into the pink house on High Street.  They said that Herrell's security lights kept coming on and off.  They suspected Herrell's son, Mike had something to do with the murder.  Neither David nor Darla could identify the men.  Police reports attached by Petitioner in his Motion for Discovery indicate that police investigated all leads from the Herron's statements.  *See id.*, PageID #3934-3940.  Petitioner does not suggest, nor does the record reflect, in what manner the police could have further investigated their statements.

(1969)(quoted in *Bracy v. Gramley*, 520 U.S. at 908-09; *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004). When a petitioner fails to make "a fact specific showing of good cause under Rule 6," the court will deny the discovery requests as a mere fishing expedition. *Stanford v. Parker, above; Williams v. Bagley*, above. Finally, if a petitioner had the opportunity to develop the facts in the state courts but failed to do so, discovery may be barred by the Antiterrorism and Effective Death Penalty Act of 1996. *See*, 28 U.S.C. § 2254(e)(2)(A)(ii); *Cullen v. Pinholster*, -- U.S. --, 131 S.Ct. 1388, 1398 (2011). ("We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits") .

Petitioner's claim, to the extent it raises a claim regarding the alleged violation of state law, fails to present an issue appropriate for federal habeas corpus review. A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a), and may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988). " '[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure'" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)). Thus, to the extent that Petitioner is seeking discovery concerning any claim that state law was violated, that request is improper.

However, Petitioner also claims a violation of his federal constitutional right to a speedy trial. After considering the parties' arguments about the relationship of the requested discovery to this claim, the Court is not persuaded that review of the record supports granting Petitioner the discovery he seeks.

The Court begins with a brief analysis of the law relating to this type of claim. As this Court said in *Curtis v. Warden, Marion Correctional Inst.*, 2013 WL 5524604, at *10 (S.D. Ohio Oct. 4, 2013).

> The Speedy Trial Clause of the Sixth Amendment is not triggered until a formal indictment or information is filed or "the actual restraints imposed by arrest and holding to answer a criminal charge" have occurred. *United States v. Lovasco*, 431 U.S. 783, 788–89, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977) (quoting United *States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971)); *see also Doggett v. United States*, 505 U.S. 647, 655, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). In a case. . . involving a claim of constitutional error stemming from pre-indictment delay, only the Fourteenth Amendment's Due Process Clause may be invoked to provide protection "against oppressive delay." *Lovasco,* 431 U.S. at 789 (citing *Marion*, 404 U.S. at 324).

This case involves pre-indictment delay.  The Due Process Clause of the Fifth Amendment requires dismissal of the charges only where the length of the pre-indictment delay caused "substantial prejudice" to Petitioner's right to a fair trial and the delay was an "intentional device to gain tactical advantage over the accused." *United States v. Marion*, 404 U.S. 307, 322 (1971).  Claims regarding excessive pre-indictment delay fail "unless the petitioner can show that the government had no valid reason for the delay or that some tactical advantage was sought to be obtained by the delay."  *United States v. DeClue*, 899 F.2d 1465, 1468 (6th Cir. 1990)(citing *Payne v. Rees*,

738 F.2d 118, 122 (6th Cir. 1984); *United States v. Greene*, 737 F.2d 572, 574 (6th Cir. 1984).

Respondent argues that under *Pinholster* any discovery on this claim would be futile because the facts were developed in the state court proceedings and may not be developed further in this case. Petitioner, citing to *Conway v. Houk*, 2011 WL 2119373 (S.D. Ohio May 26, 2011)(King, M.J.), counters that *Pinholster* is a case involving when an evidentiary hearing can be held and does not speak, directly or indirectly, to the issue of discovery.

*Conway v. Houk* is not necessarily the final word in this District on the impact which *Pinholster* may have on discovery in habeas corpus actions. *See, e.g., Blevins v. Warden, Ross Correctional Inst.*, 2011 WL 6141062, *4 (S.D. Ohio Dec. 9, 2011)(Merz, M.J.)("There cannot be good cause to collect evidence which cannot be presented"). At least one court within the Sixth Circuit has determined that *Pinholster* requires the court to decide first if the existing record supports the state courts' decision on the issue, and that discovery is warranted only if the state courts made an unreasonable determination, leaving it open to the federal court to make its own decision as to whether the claim has merit. *See Williams v. Houk*, 2012 WL 6607008 (N.D. Ohio Dec. 18, 2012). The *Williams* court also noted that, as of the date of that decision, the Court of Appeals "has not yet squarely addressed the specific issue of whether or to what extent *Pinholster* impacts the availability of discovery under Habeas Rule 6." *Id.* at *4. That appears still to be true today.

The merits of Petitioner's federal constitutional speedy trial claims were addressed in the state courts. *See State v. Brenson, supra,* at *9-10. The state court of

appeals found, based on factual determinations made in the trial court, that the claim failed both because Petitioner "failed to establish that the delay in bringing the indictment caused ... actual prejudice," which is a prerequisite to establishing a Due Process violation, and because he also "made no showing that the delay between the alleged incident and the indictment was an intentional device on the part of the Government to gain a decided tactical advantage in its prosecution" - the other part of the test. *Id.* Petitioner had the opportunity to develop a factual record on these issues during the state trial court proceedings, and it is unlikely, under *Pinholster*, that he will be granted a further opportunity to do so here.

Further, Petitioner asserts, in moving for discovery, that the State's files "will reveal whether the State was always actively pursuing charges ... or whether instead the State was negligent." That will always be the case where a habeas petitioner claims that his rights were violated by a pre-indictment delay, and cannot, by itself, serve as grounds to allow discovery. Such evidence will not assist the Court in resolving the threshold issue of whether the state courts' decisions on this claim were unreasonable in light of the clearly established law, which was correctly cited in the state court of appeals deicison, based on the state court factual record - the threshold inquiry required by *Pinholster*. Further, although it is somewhat difficult to identify with specificity what any discovery might uncover prior to actually conducting discovery, as this Court held in *Coleman v. Bradshaw*, 2007 WL 838933, *3 (S.D. Ohio March 15, 2007), "these difficulties do not erase petitioner's duty to state with some specificity what he intends to find or prove from his discovery requests. Pleading a claim ... does not automatically

entitle a petitioner to unfettered, unqualified access to the government's files in the hopes that he will find something useful."  Petitioner has not cited to anything specific he anticipates that discovery will uncover beyond the general factors relating to pre-indictment delay.

Despite his opportunity to challenge the pre-indictment delay in state court, Petitioner apparently never obtained any evidence to show that the State delayed indicting him in order to gain some tactical advantage at trial, nor was he able to persuade the trial court that the delay prejudiced him in any way.  His requested discovery does not go to that second point, and he must establish both unreasonable delay and prejudice in order to prevail on his pre-indictment delay claim.  This Court concludes that Petitioner has not established that there is reason to believe that he may be able to succeed on this claim if only he had the benefit of more factual development of the record.  Because that is so, the standard for obtaining discovery under *Harris* and *Bracy* has not been met, and the Court will deny Petitioner's request for discovery on this claim.

Finally, the Court notes that the premise of Petitioner's argument for discovery - that it might reveal the State's negligence in pursuing an indictment - also appears to be legally insufficient.  As another district court within the Sixth Circuit has noted,

> The Sixth Circuit has repeatedly held that where the pre-indictment delay is caused merely by negligence on the part of prosecutors or police, no due process violation exists. *U.S. v. Rogers*. 118 F.3d 466, 476 (6th Cir. 1997) (rejecting the argument that "reckless or negligent disregard of a potentially prejudicial circumstance violates the Fifth Amendment guarantee of due process"); *See also U.S. v.*

*Banks*, 27 Fed. Appx. 354, 357 (6th Cir. 2001) ("Our Circuit has recognized that where delay is due to simple negligence and not a concerted effort by the government to gain an advantage, no due process violation exists"). Finally, where a habeas petitioner fails to show that the prosecutor delayed the prosecution for illegitimate reasons, it is unnecessary for a court to determine whether the petitioner satisfies the "substantial prejudice" requirement. *See Wolfe v. Bock*, 253 Fed. Appx. 526, 532 (6th Cir. 2007) (petitioner failed to establish that 15–year delay between murder and his arrest was for illegitimate reasons, as was required to support claim that delay violated petitioner's due process right to a fair trial).

*McGuire v. Ludwick*, No. 2:07-cv-15399, 2009 WL 2476452, at *6 (E.D. Mich. Aug. 11, 2009).  For all these reasons, the Court finds no merit in Petitioner's request for discovery on his pre-indictment delay claim.

### B. Abuse of the Grand Jury Process

Citing *United States v. Doss*, 563 F.2d 265, 276 (6th Cir. 1977)(en banc), petitioner asserts that prosecutors abused the grand jury process (habeas corpus claim five) by failing to inform Petitioner that charges had been filed against him before he testified in 2008 before the grand jury.  Petitioner contends that he needs discovery on this claim because he was unable to develop the facts for his claim in post conviction proceedings. *See Motion for Discovery,* ECF No. 39 at 7.  Petitioner asserts he was denied his right to counsel.  He also requests an evidentiary hearing to address whether he could make a knowing, intelligent and voluntary waiver of his rights due to the use of medication. Petitioner seeks, in support of these allegations, to take the deposition of  Carol O'Brien, Delaware County Prosecutor; Kyle Rohrer, Assistant Delaware County Prosecutor; and Mark Leatherman, former Detective and Sergeant, City of Delaware Police Department.

However, for the following reasons, this Court is not persuaded that Petitioner can establish good cause for his discovery, i.e. that any specific allegation he presents causes this Court to believe that Petitioner may be entitled to relief upon further development of the facts related to this claim.

Preliminarily, it appears likely that Petitioner has waived any claim related to his allegation that he was under the influence of medication, and thereby unable to waive his rights. As this Court has often noted, in recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.*; *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court

must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, it must be decided whether the state procedural forfeiture is an 'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id*. Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis also applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

Here, petitioner never presented the merits of his claim that he was on medication and thereby unable to waive his rights to any Ohio court. His failure to raise the claim on direct appeal is a clear procedural default based on the rule in Ohio that error which appears on the face of the record must be raised on direct appeal or it is deemed to have been forfeited. If petitioner were to attempt to raise it by any other means, it would be barred by Ohio's doctrine of *res judicata. See State v. Cole*, 2 Ohio St.3d 112 (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); State v. Perry, 10 Ohio St.2d 175(1967).

Petitioner also asserts that the State abused the grand jury process by failing to advise him that charges had been filed against him prior to his 2008 testimony before the grand jury.  The state court reviewed this claim, concluding that

In his fifth assignment of error, Brenson claims that the prosecution abused the grand jury process by failing to tell Brenson that charges had already been filed against him prior to his 2008 appearance before the grand jury. We disagree.

In support of this contention, Brenson cites to the Sixth Circuit case of *U.S. v. Doss* (6th Cir. 1977), 563 F.2d 265, which held that subpoenaing a defendant to testify before the grand jury after an indictment had been filed against him amounted to prosecutorial abuse that violated the defendant's due process rights. The *Doss* court held, "where a substantial purpose of calling an indicted defendant before a grand jury is to question him secretly and without counsel present without his being informed of the nature and cause of the accusation about a crime for which he stands already indicted, the proceeding is an abuse of process which violates both the Sixth Amendment and the due process clause of the Fifth Amendment." *Id*. at 276.

In *Doss*, the Court noted, " 'the government may not in the absence of an intentional and knowing waiver call an indicted defendant before a grand jury and there interrogate him concerning the subject matter of a crime for which he stands already indicted.'" *United States v. Doss* 563 F.2d at 277 (quoting *United States v. Mandujano* [1976], 425 U.S. 564, 594, 96 S.Ct. 1768, 1785, 48 L.Ed.2d 212, 233 [Brennan, J., concurring] ).

We find *Doss* to be distinguishable from the facts in the present case. In *Doss*, the defendant was commanded to appear before the grand jury via subpoena. Such was not the case with Brenson. Brenson was invited to appear before the grand jury. As noted in our discussion of Brenson's fourth assignment of error, Brenson was under no compulsion to either appear or answer questions before the grand jury.

Second, on three separate occasions, once before the grand jury in 2002, once in a police interview in 2003, and again before the grand jury in 2008, Brenson elected to waive representation and speak with the police or the prosecutor regarding his involvement in the murder of Norman Herrell. Because we believe that Brenson's waiver of his right to

counsel was knowing, voluntary, and intelligent, we found
that the *Miranda* warnings suffice to protect Brenson's rights
during post indictment question.

Accordingly, as Brenson intentionally and knowingly
waived his Fifth and Sixth Amendment rights, we find the
trial court did not err in overruling Brenson's Motion # 36.

Accordingly, Brenson's fifth assignment of error is
overruled.

*State v. Brenson,* 2010 WL 3784890, at *23-24.

The key elements of this claim, at least as it relates to the situation addressed in
*Doss*, are the timing of the filing of criminal charges, the timing of the grand jury
testimony, and whether the defendant was informed of the pending charges before he
testified.  The relationship of the crime being investigated by the grand jury and the
questions asked of the defendant is also a consideration.  All of these facts appear, from
the recitation of facts found in the state court of appeals opinion, already to be in the
record.  Petitioner asserts, in his motion, that "facts that have not been developed below
may support" this claim, but he does not explain what those facts might be, nor how
they would assist him in proving his assertion that the grand jury process was abused.
Even setting aside the *Pinholster* issue - that is, because this matter was litigated in front
of the trial court and Petitioner clearly had the chance to develop the record, it is not
likely that this Court could consider any new evidence obtained through discovery -
Petitioner has simply not made a sufficient showing of how discovery would make it
more likely that he can prevail on his abuse of the grand jury process claim.  Therefore,
he is not entitled to conduct discovery on this issue.

## C.  Ineffective Assistance of Counsel

In the last claim at issue here, Petitioner asserts that he was denied effective assistance of counsel because his attorney failed to cross-examine or investigate inferences from testimony of Petitioner's former attorney, Tom Beal; failed to request a jury instruction in regard to Petitioner's grand jury testimony; and failed to object to bad acts evidence.  Petitioner contends that only depositions will reveal the defense strategy in this regard.  Petitioner seeks the depositions of Attorneys Kirk A. McVay and Chad A. Heald in support of this claim.

Preliminarily, Petitioner indicates that he seeks discovery on his claim of ineffective assistance of counsel based on a new issue, relating to a potential witness, Floyd Bell, that he did not present to the state courts and which he did not raise in his initial petition.  *See Motion for Discovery*, Doc. 39, PageID #3932.  Again, this Court cannot grant habeas corpus relief on a claim that was never presented to the state courts.

With respect to the testimony of Attorney Tom Beal, Petitioner's claim, as articulated in his supplemental traverse (Doc. 38) is that the prosecutor called Mr. Beal as a witness to show that Petitioner's co-defendant, Mr. Allen, went to Florida in 2000 in order to avoid prosecution.   The predicate of this claim was testimony from Mr. Beal that he told Mr. Brenson in December, 2000 (who then presumably told Mr. Allen) that the indictment was going to be dismissed.  According to Petitioner, however, Mr. Beal could not even say with certainty that he passed that information along to Mr. Brenson, so that in order for the jury to find that Mr. Allen had fled to avoid prosecution and

then returned to Ohio once he learned that the indictment was going to be dismissed, it had to stack inferences together. Petitioner claims that information from Mr. Beal's notes belies these inferences, essentially by showing that the prosecutor had not made a final decision about dismissing the first indictment until after Mr. Allen returned from Florida, and that Petitioner's counsel could have done a more thorough job of cross-examining Mr. Beal on this point in order to rebut the inference that Mr. Allen had initially fled to avoid prosecution and came back only after learning that the charges were being dropped.

The state court of appeals rejected this claim, concluding that Mr. Beal testified definitively that he told Mr. Allen about the dismissal of the indictment, so that the jury was being asked to make only one inference from his testimony and not two. Under those circumstances, the state court held that nothing objectionable occurred during the course of Mr. Beal's testimony and, further, that counsel was not ineffective for failing to conduct a further cross-examination. It also noted that "[t]he strategic decision not to cross-examine witnesses is firmly committed to trial counsel's judgment" and that the scope of cross-examination falls "within the realm of trial counsel's strategy and tactics." *State v. Brenson*, *supra*, at *48.

Petitioner's counsel apparently already has copies of Mr. Beal's notes. In order to prove ineffective assistance of trial counsel, it is difficult to imagine what other evidence there might be of further areas about which he could have been questioned. If counsel had a strategy for not pressing the issue further, it is not in the record, so that may actually be a benefit to Petitioner. Further, on the issue of prejudice, the state court

concluded that the absence of additional questioning on this issue was not prejudicial, and Petitioner has not explained how depositions of his trial attorneys would shed any light on that subject.  Again, beyond the hope that trial counsel - who may well be willing to provide affidavits here, and from whom discovery may not be needed - might say something to bolster this claim, Petitioner has not articulated any specific evidence which discovery might uncover - and he has the *Pinholster* problem here as well.  The Court does not see the need for discovery from trial counsel on the issues relating to Mr. Beal's testimony.

The two other instances of alleged ineffective assistance of counsel relate to failures to object - in one instance, to the jury's receipt, during deliberations, of a transcript of Petitioner's grand jury testimony (at least without a limiting instruction), and in the other, to the admission of prior "bad acts" evidence.  The state court of appeals found that in both instances, even if counsel performed ineffectively, Petitioner was not deprived of a fundamentally fair trial.  It based that conclusion on its overruling of assignments of error relating to giving the jury the transcripts without a limiting instruction, noting that nothing suggested the absence of such an instruction affected the outcome of the case, and that all of the "bad acts" evidence which counsel failed to object to was actually admissible.

The predicate of these two claims is apparent from the face of the record - indeed, if it were not, the claims would not properly have been raised on direct appeal.  And the primary reason given by the state court for overruling these claims relates not to whether counsel should have asked for an instruction concerning the jury's use of the

grand jury testimony or objected to the various instances of supposed "bad acts" evidence, but whether Petitioner had shown prejudice from those failures.  That inquiry, in the habeas corpus context, involves examining the state court's rationale that any error in counsel's performance was harmless to see if that is an unreasonable application of federal law.  That is not a fact-intensive inquiry beyond the need to examine the trial record in order to see how that evidence compared with other evidence of guilt and how reasonable the court of appeals' relevance decision was; those facts are already in the record, and discovery would not assist either Petitioner or the Court in making or evaluating the arguments supporting Petitioner's claim.  In short, nothing that trial counsel could say about their reasons for these alleged omissions would seem to be pertinent - nor, in light of *Pinholster*, would such testimony appear admissible.  The Court therefore concludes that Petitioner has not made a valid case for discovery from trial counsel with respect to any of these claims.

### III.  Order

For all of the above reasons, Petitioner's Motion for Discovery (Doc. 39) is **DENIED**.

### IV.  Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or

recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge
