IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JAMES A. BRENSON, JR.

    Petitioner,

v.

WARDEN, TOLEDO
CORRECTIONAL INSTITUTION,

    Respondent.

CASE NO. 2:11-CV-1146
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Terence P. Kemp

## OPINION AND ORDER

On February 2, 2015, the Magistrate Judge issued a *Report and Recommendation* recommending that Petitioner's request to strike Respondent's *Supplemental Return of Writ* be denied and that the instant petition for a writ of habeas corpus be dismissed. Petitioner has filed *Objections* to the Magistrate Judge's *Report and Recommendation*. ECF 51. Pursuant to 28 U.S.C. § 636(b), this Court has conducted a *de novo* review. For the reasons that follow, Petitioner's *Objections*, ECF 51, are **OVERRULED.** The *Report and Recommendation* is **ADOPTED** and **AFFIRMED.** Petitioner's request to strike Respondent's *Supplemental Return of Writ* is **DENIED.**

This action is hereby **DISMISSED.**

Petitioner's request for a certificate of appealability is **GRANTED** on claims one, three, four, and five, and **DENIED** on the remainder of his claims.

**Procedural History**

In June 2000 Norman "Duck" Herrell, was found dead inside of his home as the result of fifty-one stab wounds, three of which were potentially fatal. In July 2000,

1

Petitioner was charged with Herrell's murder. In January 2001, the charges were dismissed for further investigation. In April 2008, Brenson and co-defendant William T. Allen were both charged in connection with Herrell's murder. *Id.* Brenson and Allen were tried together. *State v. Brenson*, No. 09-CA-3784890, at *4 (Ohio App. 5th Dist. Sept. 28, 2010). After the jury trial, Petitioner was convicted on two counts of aggravated murder, murder, two counts of kidnapping and two counts of aggravated robbery, with repeat violent offender specifications. Petitioner is serving a sentence of thirty years to life imprisonment. *Petition*, ECF , PageID# 2.

**Objections**

Through counsel, Petitioner raises thirteen claims for relief. The Magistrate Judge recommended dismissal of claims one through five and twelve on the merits, and the remainder of Petitioner's claims as procedurally defaulted. Petitioner objects to the Magistrate Judge's recommendations. He objects to "each and every finding of fact and conclusion of law" adversely affecting him. *Objections*, ECF 51, PageID# 4093. He also objects to the recommendation of denial of his motion to strike the *Supplemental Return of Writ*. *Id.*

Petitioner's request to strike the *Supplemental Return of Writ* (ECF 11, 28) is **OVERRULED.** Nothing contained therein alters or affects the Court's conclusions in this case. Petitioner has failed to establish sufficient grounds for this Court to strike the *Supplemental Return of Writ*.

Petitioner objects to the Magistrate Judge's recommendation of dismissal on the merits of claims one and two, in which he asserts that he was denied his right to a

2

speedy trial and due process due to an eight-year delay between the filing of the initial *Indictment* and trial. Petitioner argues, essentially, that police took too long and unreasonably delayed their investigation of the case in an "unjustifiable attempt to gain a tactical advantage over the defense." *Objections*, ECF 51, PageID# 4098. He contends that this included unfairly securing three separate and inconsistent statements from him when he could not have remembered details of the crime, which the prosecution unfairly exploited at trial. PageID# 4100-01. Petitioner objects to the Magistrate Judge's conclusion that he failed to establish prejudice. He raises the same arguments he previously did in this respect. According to Petitioner, police purposely delayed prosecution of the case to trick him into believing he was cooperating with the authorities over the years, during which time significant evidence was lost or destroyed. PageID# 4102-03.

To secure relief on the basis of pre-indictment delay Petitioner must establish both that the delay was the result of an intentional means by which to obtain a tactical advantage over him, and that he thereby suffered "substantial prejudice." *United States v. Marion*, 404 U.S. 307, 322 (1971). Petitioner must establish that the government had no valid reason for the delay. Here, the government indicates that it delayed the filing of the indictment in order to obtain further evidence against Petitioner. That is a valid reason for delay, regardless of whether the defense may have been somewhat prejudiced. *United States v. Lovasco*, 431 U.S. 783, 795-96 (1977). Despite what Petitioner refers to as "halting" and "intermittent investigation" by police with no "sense of urgency or concern about the passage of time," *Objections*, ECF 51, PageID# 4095, 4097,

3

mere negligence or recklessness does not suffice to meet the standard set forth in *Marion* or *Lovasco*. *See Parker v. Burt*, -- F.3d --, 2015 WL 64619, at *5 (6th Cir. Jan. 5, 2015) (no justification for delay in filing charges where the State later prosecutes without any new evidence is insufficient to establish improper intent.) Because Petitioner has failed to establish that the prosecution intentionally delayed filing charges in order to obtain a tactical advantage, the Court need not address Petitioner's arguments regarding the prejudice he suffered.

Petitioner objects to the Magistrate Judge's recommendation of dismissal on the merits of claim three, in which he asserts that the trial court unconstitutionally denied his request to sever his trial from that of the co-defendant. *Objections*, ECF 51, PageID# 4103. Petitioner argues, specifically, that "the jury's verdict did not indicate that they gave any individual thought to either defendant's culpability" but instead convicted based on identical charges. PageID# 4104. Petitioner maintains that the case was complex. Severance was required due to a lack of evidence indicating that Petitioner and co-defendant Allen worked together, and police obtained Allen's DNA, the most critical evidence in the case. PageId# 4104-05. Petitioner made these same arguments previously.

The state appellate court has rejected this claim. This Court conducts a "highly deferential" standard of review. Under this standard, the Court is not persuaded that Petitioner has established that the state court contravened or unreasonably applied clearly established federal law, or based its decision on an unreasonable determination of the facts in light of the evidence presented, as is required to obtain federal habeas

4

corpus relief. 28 U.S.C. § 2254(d), (e). As noted by the Magistrate Judge, the state appellate court determined that DNA evidence against Allen would have been admissible against Petitioner in a separate trial. The trial court instructed the jury on complicity, or aiding and abetting in the commission of a crime, and so evidence of Allen's DNA was also probative of Petitioner's guilt. Moreover, as outlined in the decision of the Ohio Court of Appeals, the prosecution introduced other evidence of Petitioner's guilt.

Petitioner objects to the Magistrate Judge's recommendation of dismissal on the merits of claims four and five, in which he asserts that his testimony to the grand jury was obtained in violation of his right to counsel and the prosecution abused the grand jury process. Neither claim prevails under AEDPA.

Petitioner maintains that he was entitled to an attorney after the filing of the criminal complaint and the warrant for his arrest. *Objections*, ECF 51, PageID# 4108. But Petitioner waived his right to counsel at the grand jury testimony, and the initiation of adverse judicial proceedings does not bar post-indictment police interrogation in the absence of counsel. Rather, a defendant may be questioned where he knowingly and intelligently waives his right to counsel. *See Patterson v. Illinois*, 487 U.S. 285, 292-93 (1988). As the Ohio Court of Appeals noted, Petitioner was given *Miranda* warnings at the outset of his questioning. *State v. Brenson*, No. 09-CA-18, 2010 WL 3784890, at *21 (Ohio Ct. App. 2010). He was advised that he had a right to consult an attorney and that if he could not afford one, the Court may appoint one. *Id.* "[Petitioner] affirmatively waived his right to an attorney for the purpose of Grand Jury." *Id.*

5

Moreover, he was also advised that he had a right not to give testimony before the Grand Jury and that if he chose to testify he was waiving his right against self-incrimination, and that anything discussed during the Grand Jury proceedings could be used against him "in a court of law some day." *Id.* "[Petitioner] affirmatively indicated that he understood this consequence of testifying before the Grand Jury." *Id.* These warnings sufficiently informed Petitioner of the rights he was giving up, as the Supreme Court has held that the "whatever warnings suffice for *Miranda*'s purposes will also be sufficient in the context of postindictment questioning." *Patterson*, 487 U.S. at 298.

Petitioner argues his waiver was not knowing, intelligent, and intentional, however, because relying "on *Miranda* warnings in this case ignores the realities of the situation" and that the "accused should know when a criminal prosecution is pending against him, particularly a prosecution carrying the possibility of the death penalty." *Objections*, ECF 51, PageID# 4109-10. But the state court's conclusion was not contrary to or an objectively unreasonable application of U.S. Supreme Court precedent. 28 U.S.C. § 2254(d)(1). In *Patterson*, the Supreme Court "d[id] not address the question whether or not an accused must be told that he has been indicted before a postindictment Sixth Amendment waiver will be valid." 487 U.S. at 295 n.8. Indeed, the Court declined to "even pass on the desirability of so informing the accused—a matter that can be reasonably debated." *Id.*

Moreover, the Supreme Court has elsewhere indicated that an accused need not be informed of an indictment before validly waiving one's constitutional rights. In

6

*Moran v. Burbine*, the Court rejected a defendant's argument that he was deprived of essential information and so did not knowingly waive his rights under the Fifth Amendment because the police failed to inform him of his attorney's efforts to reach him prior to questioning. The Court held that it had "never read the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights." 475 U.S. 412, 422 (1986). Rather, "[o]nce it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law." *Id.* at 422-23. Other decisions similarly reflect show that the State's actions did not run afoul of federal law. *See United States v. Myers*, 123 F.3d 350, 354 (6th Cir. 1997) ("Myers argues that because he was a target of the grand jury investigation, he had a constitutional right to a letter informing him of his target status prior to his testimony. The Supreme Court, however, has rejected this very argument.") (citing *United States v. Washington*, 431 U.S. 181, 189 (1977)).

Here, the trial court found that Petitioner knew that any statement he made could be subsequently used against him in criminal proceedings. Therefore, he knew the benefit of having counsel while making these statements, and was therefore informed of the possible consequences of foregoing the aid of counsel. *Brenson*, 2010 WL 3784890, at *23. And, Petitioner was aware of the nature of the charge and his suspected involvement, having previously been indicted, arraigned, consulted counsel,

7

and engaged in discovery. *Id.* Thus, Petitioner has not shown the state court's decision "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Richter*, 131 S.Ct. at 786–87.

Nevertheless, Petitioner says the grand jury process was abused because the prosecution failed to tell him that charges had already been filed against him before his grand jury appearance. But *Patterson* acknowledged the void in Supreme Court law as to "whether or not an accused must be told that he has been indicted before a postindictment Sixth Amendment waiver will be valid." 487 U.S. at 295 n.8. And in *United States v. Washington*, the Supreme Court held that a grand jury witness's incriminating testimony could be used against him in subsequent prosecution where he was advised of and waived his right to remain silent even though he was unaware that he was a suspect. 431 U.S. 181, 189 (1977). The Court held that "[b]ecause target witness status neither enlarges nor diminishes the constitutional protection against compelled self-incrimination, potential-defendant warnings add nothing of value to protection of Fifth Amendment rights." *Id.*

Petitioner relies on *United States v. Mandujano*, 425 U.S. 564 (1976), a case that the Sixth Circuit subsequently found to "impl[y]" that prosecutorial abuse of the grand jury process could "require[e] voiding of a perjury indictment." *United States v. Doss*, 563 F.2d 265, 274 (6th Cir. 1977) (en banc). *Mandujano* addressed "whether the warnings called for by *Miranda* . . . must be given to a grand jury witness who is called to testify about criminal activities in which he may have been personally involved; and whether,

8

absent such warnings, false statements made to the grand jury must be suppressed in a prosecution for perjury based on those statements." 425 U.S. at 566 (plurality opinion). The Court unanimously held that the defendant could be convicted for perjury despite no *Miranda* warnings at the grand jury.

Aside from that core holding, the eight justices splintered.[1] Four justices held that *Miranda* warnings did not need to be delivered to a witness for grand jury testimony as to criminal activity he may have committed. 425 U.S. at 580-81 (plurality opinion). Two concurring justices found that the defendant could be prosecuted for perjury on the facts of the case. But they would have further held that "in the absence of an intentional and intelligent waiver by the individual of his known right to be free from compulsory self-incrimination," the prosecution may not call an individual to testify "whom it has probable cause . . . to suspect of committing a crime, and by use of judicial compulsion compel him to testify with regard to that crime." 425 U.S. at 598-99 (Brennan, J., concurring) (footnotes omitted). And the remaining two justices concurred in the judgment on the grounds that the Fifth Amendment privilege offers no protection for perjury. *See* 425 U.S. at 609 (Stewart, J., concurring). This case offers Petitioner no clearly established precedent in support of his claim.

Undeterred, Petitioner points to various statements made in the three opinions. None reflect "clearly established Federal law" that the Ohio court contravened or unreasonably applied. First, he points out that the plurality opinion noted that "nothing remotely akin to 'entrapment' or abuse of process is suggested by what

---

[1] Justice Stevens took no part in consideration of this case.

occurred here." *Mandujano*, 425 U.S. at 583 (plurality opinion). This observation, however, confirms only that abuse of the grand jury process played no role in the plurality's analysis. It does not reflect a holding of the Court, and "[c]learly established Federal law refers to . . . holdings, not . . . dicta." *Brown v. Bradshaw*, 531 F.3d 433, 436 (6th Cir. 2008). Second, Petitioner points to Justice Stewart's comment that "this is not a case where it could plausibly be argued that the perjury prosecution must be barred because of prosecutorial conduct amounting to a denial of due process." 425 U.S. at 609 (Stewart, J., concurring). But this merely explains Justice Stewart's decision to not "reach[] the other issues explored in [Chief Justice Burger's] opinion and in [Justice Brennan's] separate opinion." *Id.* Again, this statement reflects no holding of the Court. And third, Petitioner highlights Justice Brennan's statement that "[i]t is clear that the government may not in the absence of an intentional and knowing waiver call an indicted defendant before a grand jury and there interrogate him concerning the subject matter of a crime for which he already stands formally charged." 425 U.S. at 594 (Brennan, J., concurring). But the state courts reasonably determined that Petitioner *did* intentionally and knowingly waive his constitutional rights.[2]

---

[2] Justice Brennan went on to state that "[s]uch a waiver could readily be demonstrated by proof that the individual was warned prior to questioning that he is currently subject to possible criminal prosecution for the commission of a stated crime." *Mandujano*, 425 U.S. at 600. But the Supreme Court subsequently held that a grand jury witness need not be tipped off that he is a potential suspect before waiving his Fifth Amendment rights. *See Washington*, 431 U.S. at 189; *cf. id.* at 193 (Brennan, J., dissenting) ("I would hold that a failure to warn the witness that he is a potential defendant is fatal to an indictment of him when it is made unmistakably to appear, as here, that the grand jury inquiry became an investigation directed against the witness and was pursued with the purpose of compelling him to give self-incriminating testimony upon which to indict

Petitioner also relies on *United States v. Doss*, 563 F.2d 265 (6th Cir. 1977) (en banc), where the Sixth Circuit held:

> Where a substantial purpose of calling an indicted defendant before a grand jury is to question him secretly and without counsel present without his being informed of the nature and cause of the accusation about a crime for which he stands already indicted, the proceeding is an abuse of process which violates both the right to counsel provision of the Sixth Amendment and the due process clause of the Fifth Amendment.

*Id.* at 276. *Doss* offers Petitioner no relief here, however, because it is not "clearly established Federal law, *as determined by the Supreme Court of the United States.*" 28 U.S.C. § 2254 (emphasis added). And in any event, the Ohio Court of Appeals distinguished *Ross* on reasonable grounds. The defendant there was commanded to appear before the grand jury via subpoena, whereas Petitioner was invited to appear and was under no compulsion to testify. *Brenson*, 2010 WL 3784890, at *24. And Petitioner decided to waive his right to counsel and spoke with authorities on three separate occasions regarding his involvement in the murder of Herrell (the grand jury in 2002, a police interview in 2003, and the grand jury once more in 2008). Because his waiver of his right to counsel was knowing, voluntary, and intelligent, the *Miranda* warnings he received protected his rights during post indictment questioning and thus he intentionally and knowingly waived his Fifth and Sixth Amendment rights. *Id.* Thus, even if *Doss* reflected clearly established Supreme Court precedent, the state

---

him. I would further hold that without such prior warning and the witness' subsequent voluntary waiver of his privilege, there is such gross encroachment upon the witness' privilege as to render worthless the values protected by it unless the self-incriminating testimony is unavailable to the Government for use at any trial brought pursuant to even a valid indictment."). *See also United States v. Wong*, 431 U.S. 174 (1977).

court's holding does not contravene or unreasonably apply it. *See Richter*, 562 U.S. at 101 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.").

Though the Court finds the State's actions here deeply concerning, the state court did not contravene or unreasonably apply clearly established Federal law, as determined by the U.S. Supreme Court. Claims four and five lack merit under AEDPA.

Petitioner objects to the Magistrate Judge's recommendation of dismissal of claim twelve, in which he asserts the denial of a fair trial based on cumulative error, as failing to provide a basis for federal habeas corpus relief. *Objections*, ECF 51, PageID# 4115. He contends that the United States Court of Appeals for the Sixth Circuit has addressed claims of cumulative error in habeas corpus proceedings, as has the United States Court of Appeals for the Tenth District. He refers to the dissenting opinion in the state appellate court. PageID# 4115-116.

Again, the United States Supreme Court has not held that habeas corpus relief may be granted on a claim of cumulative error. This claim therefore fails to provide a basis for relief. Moreover, the Court has concluded that Petitioner has failed to establish any error of constitutional dimension, much less cumulative error.

Petitioner objects to the Magistrate Judge's recommendation of dismissal of claims sixth through eleven and thirteen as procedurally defaulted. PageID# 4117. He argues that he fairly presented these claims to the state courts.

Petitioner failed to raise these claims in the Ohio Supreme Court. His argument that he did so fails for the reasons already discussed by the Magistrate Judge. Likewise, the Court rejects Petitioner's argument that he has established cause and prejudice for his procedural defaults or that he is the victim of a manifest miscarriage of justice.

For all of the foregoing reasons, Petitioner's *Objections*, ECF 51, are **OVERRULED.** The *Report and Recommendation* is **ADOPTED** and **AFFIRMED**. Petitioner's request to strike Respondent's *Supplemental Return of Writ* is **DENIED.**

This action is hereby **DISMISSED**.

**Request for a Certificate of Appealability**

Petitioner requests a certificate of appealability on claims one through five and twelve. The Court dismisses these claims on the merits. When a claim has been denied on the merits, a certificate of appealability may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is a codification of *Barefoot v. Estelle*, 463 U.S. 880 (1983). See Slack v. McDaniel, 529 U.S. 473, 484 (2000) (recognizing codification of *Barefoot* in 28 U.S.C. § 2253(c)(2)). To make a substantial showing of the denial of a constitutional right, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack*, 529 U.S. at 484 (quoting *Barefoot*, 463 U.S., at 893 n. 4).

The Court is persuaded that reasonable jurists could debate whether dismissal is appropriate on claims one, three, four, and five. The Court is not so persuaded on the remainder of Petitioner's claims. The Court certifies the following issues for appeal:

> Was Petitioner denied his right to due process due to an eight-year delay between the filing of the initial Indictment and trial?
>
> Did the state trial court unconstitutionally refuse to sever Petitioner's trial from that of the co-defendant?
>
> Did the State obtain Petitioner's statements to the grand jury in violation of his right to counsel or through abuse of the grand jury process?
>
> Do any of the foregoing issues warrant federal habeas corpus relief?

**IT IS SO ORDERED.**

___8-19-2015___  
**DATE**

_____  
**EDMUND A. SARGUS, JR.**  
**CHIEF UNITED STATES DISTRICT JUDGE**